UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JEANE L. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:11-CV-172-TAV-HBG |
| | ) |
| J.J.B. HILLIARD, W.L. LYONS, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for alleged breach of fiduciary duty, negligence, recklessness, and violation of the Tennessee Securities Act brought by Plaintiff Jeane L. Smith in her capacity as a co-trustee of three testamentary trusts against Defendant J.J.B. Hilliard, W.L. Lyons, LLC ("Hillard Lyons") based on the alleged conduct of one of its former registered representatives, David Stanley Shelton. Specifically, Plaintiff alleges that Shelton mismanaged the trusts' assets by purchasing two $1 million annuities on margin debt which resulted in trading losses, caused the trusts to pay substantial margin debt, ultimately led to margin calls, and the forced selling of the trusts' municipal bonds.

This matter is before the Court on Defendant's motion for summary judgment [Doc. 12]. Plaintiff has responded [Doc. 15]. The Court has carefully considered the motion and, for the reasons stated herein, finds that Defendant's motion for summary judgment should be granted.

I.  **Background**

Hilliard Lyons is a regional broker-dealer headquartered in Louisville, Kentucky. David Stanley Shelton joined Hilliard Lyons in 1991 as a registered representative in its Knoxville, Tennessee office [Doc. 12-1]. Shelton's employment with Hilliard Lyons ended on or about August 23, 2005. *Id.*

Plaintiff is the trustee of three testamentary trusts which were established by the Last Will and Testament of Ula Love Doughty, as well as the executor of the Will [Doc. 12-1]. The first trust, the Ula Love Doughty Charitable Remainder Annuity Trust, was created for the benefit of Plaintiff for her lifetime and thereafter, for the benefit of the University of Tennessee [Doc. 1]. The second trust, the Ula Love Doughty Charitable Remainder Annuity Trust II, was created for the benefit of Pamela Lanford for her lifetime and thereafter, for the benefit of Scott Lanford for his lifetime and thereafter, for the benefit of the University of Tennessee. The third trust, the Ula Love Doughty Charitable Remainder Annuity Trust III, was created for the benefit of Samuel Smith, Larry Lanford (now deceased), Keith Martin, Christopher Martin, and Scott Lanford for their lifetimes and thereafter, for the benefit of the University of Tennessee at Knoxville. The Doughty Will named Plaintiff and Shelton as the co-trustees of these three trusts. It also named Shelton as the investment counselor for the trusts. With regard to investments, the Will gave the trustees complete discretion as to the investments that would be made. *Id.*

2

Prior to her death, Doughty held an investment account with Hilliard Lyons and Shelton served as her financial advisor on this account [Doc. 12-1]. Doughty's investments included two $1 million Annuities: a Declaration Annuity and a Triple Advantage Annuity. *Id.* Following her death in March 2000, Doughty's Hilliard Lyons account was transitioned into the Estate Account of Ula L. Doughty ("Estate Account"), with Plaintiff designated as the executor for this account [Doc. 12-2].

Defendant states that Plaintiff was competent and knowledgeable as to financial matters. At the time of Doughty's death, Plaintiff was working as a bookkeeper, a position she had held for various employers for several decades. *Id.* Defendant avers that as a bookkeeper, Plaintiff's duties included, among other actions, reconciling bank statements and checking accounts, paying bills, writing checks, and overseeing payroll. *Id.* Plaintiff also met with Doughty regularly for several years preceding Doughty's death to review her investments in her Hilliard Lyons' account. As such, Defendant avers Plaintiff was familiar with Doughty's investments in this account prior to becoming executor for the Estate Account.

On May 25, 2000, Plaintiff executed a Pacific Value Variable Annuity Application, authorizing the purchase of a $1 million variable annuity ("Pacific Life Annuity") which named her as the annuitant and the Ula Love Doughty Charitable Remainder Trust as the beneficiary [Doc. 12-2]. The "Statement of Applicant" provision in the application located immediately above Plaintiff's signature states, in pertinent part:

> My agent and I discussed my financial background, as a result I believe this Contract will meet my insurable needs and financial objectives. . . . I

3

> understand that Contract Values may increase or decrease depending on the investment experience of the Variable Accounts. Contract values under the Variable Accounts are variable and are not guaranteed. I UNDERSTAND THAT ALL PAYMENTS AND VALUES PROVIDED BY THE CONTRACT MAY VARY AS TO DOLLAR AMOUNT TO THE EXTENT THAT THEY ARE BASED ON THE INVESTMENT EXPERIENCE OF THE SELECTED PORTFOLIO(S).
>
> I have received prospectuses. I hereby represent my answer to the above questions are correct and true to the best of my knowledge and belief, and agree that this application will be part of the Annuity Contract issued by Pacific Life.

*Id.* (emphasis in original). The application also listed how the investments were to be allocated within the Annuity. *Id.*

On August 28, 2000, Plaintiff executed an American Express Signature One Variable Annuity Application, authorizing the purchase of a second $1 million annuity ("American Express Annuity") which named her as the annuitant and the Ula Love Doughty Charitable Remainder Trust II as the beneficiary [Doc. 12-2]. Section 11 of this application, located immediately above Plaintiff's signature and titled "It Is Agreed That:" states in pertinent part:

> 4.   I/we acknowledge receipt of current prospectuses for the variable annuity. . . .
>
> 7.   I/we understand the earnings and values, when based on the investment experience of a variable fund, portfolio, account or subaccount, are not guaranteed and may both increase and decrease.

*Id.* Like the Pacific Life Annuity Application, the American Express Annuity Application listed how the investments were to be allocated within the annuity. *Id.*

Plaintiff does not dispute that she was aware of and authorized the purchase of the two annuities. *Id.* Plaintiff also admits that she received monthly account statements

4

from Hilliard Lyons in her capacity as the executor of the Estate Account and that she knew she could contact Shelton if she had any questions regarding the account statements or any of the investments or transactions reflected on the statements. Plaintiff admits in her deposition that she received monthly statements from Hilliard Lyons for the period between April 2000 and November 2005. As such, Plaintiff received 68 monthly statements from Hilliard Lyons during this time period. She also does not dispute that she received quarterly statements for both the Pacific Life Annuity and the American Express Annuity from the respective companies. *Id.*

In February 2001, Hilliard Lyons directed Shelton to resign as a co-trustee for any trust in which he served in that capacity because it was contrary to the company's internal guidelines. Shelton testified that he was serving as a co-trustee for trusts other than the Doughty trusts during this time period and that this directive was not related specifically to the Doughty trusts. Shelton communicated to Plaintiff that he had been directed to resign as the co-trustee of the trusts during this time period [Doc. 12-1].

The Pacific Life and American Express Annuities suffered significant losses in value following their issuance. By the end of 2002, the contract value of the Pacific Life Annuity had decreased from $1 million to $485,540.74. Similarly, the contract value of the American Express Annuity had decreased from $1 million to $466,992.12 by the end of 2002 [Doc. 12-2]. These losses were reflected on the Hilliard Lyons' account statements received by Plaintiff in 2002, 2003, 2004 and 2005, and on the Pacific Life Annuity and American Express Annuity statements received by Plaintiff on a quarterly

5

Case 3:11-cv-00172-TAV-HBG Document 26 Filed 01/21/14 Page 5 of 14 PageID #: 410

basis from 2002 to 2011. Plaintiff received 45 separate quarterly statements from Pacific Life between June 2000 and September 2011. Plaintiff received 41 quarterly statements from American Express between September 2000 and August 2006. *Id.*

Shelton left his employment with Hilliard Lyons in August 2005 and took a position with another broker-dealer [Doc. 12-1]. After talking with Shelton, Plaintiff decided to move the Estate Account to Shelton's new employer [Doc. 12-2]. Plaintiff closed the Estate Account held at Hilliard Lyons in October 2005.

Plaintiff filed the instant complaint on March 2, 2011 alleging that Shelton acted unlawfully in his management of the three trusts by purchasing the two annuities using margin debt and that Hilliard Lyons is responsible for his alleged misconduct [Doc. 1]. Plaintiff admits, however, that she was aware of and authorized the purchase of the two annuities in May and August 2000, and that she received monthly account statements from Hilliard Lyons and quarterly statements for the two annuities in her capacity as executor of the estate and trustee of the three trusts [Doc. 12-2].

Defendant has moved for summary judgment on Plaintiff's claims asserting that Plaintiff did not file this action until March 2, 2011, over ten years after the purchase of the two annuities, over nine years after they had suffered a significant loss in contract value, and over five years after Shelton terminated his employment with Hilliard Lyons. Thus, Defendant asserts Plaintiff's claims are barred by the applicable statutes of limitations and/or statutes of repose.

Plaintiff responds that the running of the statute of limitations is tolled by Defendant's failure to disclose to her that the investments Shelton recommended for the Estate Account were incompatible with, and far riskier than, the account's stated investment objectives.

## II.  Standard of Review

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "a party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The "mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577,

582 (6th Cir. 1992). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the court concludes a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Id.*

**III.   Analysis**

   **A.   Claims for Breach of Fiduciary Duty, Negligence and Recklessness**

Defendant argues that Plaintiff's claims for breach of fiduciary duty, negligence, and recklessness are time-barred by the applicable statute of limitations. Under Tenn. Code Ann. § 28-3-105(1), a three-year statute of limitations is applicable to Plaintiff's claim for breach of fiduciary duty, which Plaintiff alleges resulted in injury to her property. *See also Keller v. Colgems-EMI Music,* 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996) ("regardless of whether a complaint sounds in contract, if the suit seeks to recover damages for injuries to the plaintiff's property, the applicable limitations period is three years as found in Tenn. Code Ann. § 28-3-105); *Cagle v. Hybner,* 2008 WL 2649643 at *13 (Tenn. Ct. App. July 3, 2008) ("The statute of limitations for a claim of breach of

8

fiduciary duty is three years from the time the plaintiff discovered the alleged wrong."); *SunTrust Bank v. Stoner,* 2008 WL 4443281 at *3 (E.D. Tenn. Sept. 26, 2008) ("The gravamen of plaintiff's claim is a breach of a fiduciary duty. Under Tennessee law, the applicable statute of limitations is therefore three years").

A three-year statute of limitations is also applicable to Plaintiff's claims for negligence and recklessness, which Plaintiff alleges resulted in injury to her property. *See* Tenn. Code Ann. § 28-3-105(1); *Gunter v. Lab. Corp. of Am.,* 121 S.D.3d 636, 642 (Tenn. 2003) ("claims for economic damages arising from property rights are governed by the three-year limitations period for injuries to property"). In a suit for property damages under Tenn. Code Ann. § 28-3-105, "the cause of action accrues at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered." *Prescott v. Adams,* 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981). Although the statute of limitations may be tolled while a plaintiff has no actual knowledge of the injury and was not placed on inquiry notice, "a plaintiff is not permitted to delay filing suit until all the injurious effects or consequences of the alleged tortious conduct are fully known." *Cagle,* 2008 WL 2649643 at *14.

> The issue of whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question. Where, however, the undisputed facts demonstrate that no reasonable trier of fact could conclude that the plaintiff did not know, or in the exercise of reasonable care and diligence should have known, that he sustained an injury as a result of the defendant's wrongful conduct, dismissal of the complaint is appropriate.

*Id.*

9

Case 3:11-cv-00172-TAV-HBG   Document 26   Filed 01/21/14   Page 9 of 14   PageID #: 414

In an attempt to avoid the statute of limitations applicable in this case, Plaintiff relies on the discovery rule to excuse her failure to file this action for more than ten years after she authorized the purchase of the two annuities at issue. As recently held by the Tennessee Court of Appeals, the Tennessee discovery rule:

> provides that a cause of action accrues and the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. The discovery rule does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages . . . or until the plaintiff knows the specific legal claim it has . . . . The discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim.

*Graham v. Lake Park Condo-Signal View,* 2013 WL 5974921 at *4 (Tenn. Ct. App. Nov. 8, 2013) *quoting Faherner v. SW Mfg. Inc.,* 48 S.W.3d 141, 143 (Tenn. 2001); *Redwing v. Catholic Bishop for Diocese of Memphis,* 363 S.W.3d 436, 459 (Tenn. 2012).

Under Tennessee's discovery rule, the statute of limitations "is tolled only during the period when the plaintiff has no knowledge that a wrong occurred, and as a reasonable person is not put on inquiry." *Id.* The Tennessee Supreme Court has held "that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard." *Citicorp Mortgage Inc. v. Roberts,* 1998 WL 690839 at *3 (Tenn. Oct. 5, 1998).

The limitations period for Plaintiff's claims for breach of fiduciary duty, negligence and recklessness began to run on May 25, 2000, when the Pacific Life annuity

10

was purchased by Plaintiff and Shelton as co-trustees, and on August 28, 2000, when the American Express annuity was purchased by Plaintiff and Shelton as co-trustees. Plaintiff had actual knowledge that the particular investments were purchased at that time, as she signed the annuity applications. Shelton testified that he made recommendations to Plaintiff regarding all of the investments for the trusts and that she agreed to the investment choices. Plaintiff delayed filing suit until 2011, over ten years after the two annuities were purchased.

Moreover, Plaintiff knew or should have known of the losses which were sustained by the Pacific Life and American Express annuities long before she filed her Complaint. The record shows that immediately after Plaintiff authorized the purchase of these two annuities, she began receiving regular statements from Hilliard Lyons, Pacific Life, and American Express showing the precise allocation of the annuity investments and that the annuities were decreasing in value. Hilliard Lyons began sending Plaintiff monthly statements in April 2000; Pacific Life began sending plaintiff quarterly statements in June 2000; and American Express began sending Plaintiff quarterly statements in September 2000. Plaintiff does not deny that she received these statements regularly. These statements provided Plaintiff with notice of any potential claim she may have had regarding the allocation of the investments that she authorized and notice of any resulting loss in the value of the investments, the majority of which occurred from 2000 through 2002. The Court finds that no reasonable trier of fact could conclude that Plaintiff did not know, or in the exercise of reasonable care and diligence should have

known, that the trusts sustained injury during the time period between May 2000 and December 2002.

The last possible date an injury could have been inflicted by Hilliard Lyons, acting through Shelton, was August 23, 2005, the last day of Shelton's employment with Hilliard Lyons. Plaintiff waited more than five years after Shelton's employment with Hilliard Lyons ended to file her complaint. Accordingly, the Court finds that Plaintiff's claims for breach of fiduciary duty, negligence and recklessness are time-barred as a matter of law.

There is no evidence in the record before the Court that either Shelton or Hilliard Lyons engaged in any fraudulent conduct or made any misrepresentations to induce Plaintiff to purchase the two annuities at issue. Plaintiff has submitted no evidence that Shelton or Hilliard Lyons made any misrepresentations or took any action to prevent Plaintiff from discovering the reasons for the loss in value in the two annuities. In fact, the undisputed evidence demonstrates that Plaintiff knowingly and voluntarily authorized the purchase of the two annuities in her capacity as the co-trustee of the trusts and executor of the Estate Account, that she was aware of the allocations of the investments within the annuities at the time she authorized their purchase, and that Shelton only made recommendations to Plaintiff regarding all of the investments in the trusts and that she agreed to the investment choices.

Plaintiff testified that she met with Doughty on a regular basis for several years preceding Doughty's death to review her investments in her Hilliard Lyons' account.

Plaintiff admits that she was familiar with Doughty's investments in this account prior to becoming the executor for the Estate Account – investments which similarly included the purchase of two annuities by Doughty prior to her death and which paid proceeds from the annuities to the Estate Account upon Doughty's death. Plaintiff further testified that during the time Shelton worked at Hilliard Lyons she talked with him a couple of times each month to discuss the Estate Account and the trusts. Plaintiff's testimony demonstrates that she was familiar with and had knowledge of the investments in both Doughty's account and the trusts. Thus, the Court finds that the undisputed facts in this case demonstrate that no reasonable trier of fact could conclude that Plaintiff did not know, or in the exercise of reasonable care and diligence should have known, that the trusts had sustained an injury during the time between May 2000 and December 2002 due to the purchase of the two annuities.

Plaintiff argues the running of the state of limitations is tolled by Defendant's failure to disclose to her that the investments Shelton recommended for the Ula Doughty Estate Account were incompatible with, and far riskier than, the account's stated investment objective. However, assuming the truth of Plaintiff's assertion that the investments recommended by Shelton were incompatible with the Estate Account's objective of tax free income, Plaintiff cannot ignore the record evidence showing that she was provided with information on the two annuities which stated their variable nature, and she cannot ignore the record evidence showing that she received statements from Hilliard Lyons and the companies which issued the annuities, showing a decline in the

contract value of the annuities between 200 and 2002. As stated by the Tennessee Court of Appeals, the discovery rule does not delay the accrual of her cause of action and the commencement of the statute of limitations until Plaintiff knows the full extent of the damages or until she knows the specific legal claim she has. *See Graham v. Lake Park Condo-Signal View,* 2013 WL 5974921 at *4. Plaintiff has not provided the Court with any plausible reason why she did not discover her alleged causes of action at the time the losses occurred to the Estate Account. Accordingly, the Court finds that Plaintiff cannot rely on tolling the statute of limitations to save her claims.

### B. Claim under the Tennessee Securities Act

Plaintiff concedes that her Tennessee Securities Act claim is barred by the statue of repose in the Act [Doc. 15]. Accordingly, the Court will dismiss her claim brought under the Tennessee Securities Act.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendant Hilliard Lyons' motion for summary judgment [Doc. 12] and this case is **DISMISSED.**

Defendant's motion to strike portions of the declaration of Louis Straney [Doc. 18] is **DENIED as moot.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

14

Case 3:11-cv-00172-TAV-HBG   Document 26   Filed 01/21/14   Page 14 of 14   PageID #: 419